# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3080

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Northern |
| | * District of Iowa. |
| Leland Richard Vinton, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: March 4, 2005
Filed:  November 29, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Leland Richard Vinton was convicted of conspiracy to distribute and possession with intent to distribute more than fifty grams of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and 851, and possession of a firearm as a felon and unlawful user of a controlled substance, in violation of 18 U.S.C. § § 922(g)(1), 922(g)(3), and 924(a)(2).  After a four-day jury trial, the district court[1] sentenced him to 168 months of imprisonment for the conspiracy, 168 months for possession of methamphetamine with intent to distribute,

---

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

and 120 months for the firearm violation, with all sentences to be served concurrently. We affirm.

We state the facts in the light most favorable to the jury's verdict. In 2002, the Central Iowa Task Force investigated Vincent Deherrerea, Cody Stanley, Chad Risius, and Dan Vinton (Richard's brother) regarding methamphetamine distribution in and around Eldora, Iowa. These four individuals were indicted and pleaded guilty. The evidence presented at Richard Vinton's (whom we will hereafter in this opinion refer to simply as Vinton) trial indicated that he was a part of this larger conspiracy. Tina Larson, Chad Risius, and Alan Haas all testified to driving Deherrerea to Vinton's house during 2001 and 2002, where Deherrerea delivered and picked up drugs. A number of witnesses testified to participating in direct methamphetamine transactions with Vinton. Deherrerea testified to trading "eight balls" of methamphetamine with Vinton in exchange for another type of methamphetamine on as many as fifteen different occasions. Sarah Farmer, Alan Clapp, and Troy Hill also testified to receiving quantities of methamphetamine from Vinton.

The government also presented detailed evidence about Vinton's involvement in a specific, large-scale drug transaction involving a number of parties. The evidence indicated that Vinton reached an agreement with others to possess and then distribute methamphetamine to Randy Young in February 2003. Deherrerea testified that he had a deal to sell Young several ounces of methamphetamine through Haas, but the transaction was interrupted when he was arrested in February. Deherrerea called Vinton's house from jail because he was concerned about having the methamphetamine in his house. He reached Vinton's girlfriend, Lisa Brandt, and said "I need one of you two to do me a favor and go to my house and get something out of my house for me." Amber Risius, who lived with Deherrerea at the time, testified that Brandt came over and retrieved the package, which was wrapped in black tape. Vinton testified that Brandt later showed him the package, which she had hidden under the floorboard of her car.

While Deherrerea was still in jail, he heard from Haas that Young was upset that he had not received the methamphetamine and was threatening Deherrerea's girlfriend, Risius. Deherrerea told Haas to get some of the methamphetamine from Vinton and give it to Young. Haas called Vinton, who agreed to help. Vinton admitted in his testimony that he brought a portion of the methamphetamine to Haas at his body shop so that Haas could deliver the drugs to Young. Vinton testified that he brought the remainder of the methamphetamine to Alan Clapp and told him to get rid of the drugs. Clapp disputed this testimony and stated that he discovered the package of methamphetamine under an air compressor in his office. Clapp stated that he assumed it was Vinton's because Vinton had recently provided electrical service to the air compressor. Clapp turned the methamphetamine over to law enforcement and after an investigation, Vinton was indicted in June.

The jury convicted Vinton of the counts as charged. Vinton's Presentence Investigation Report concluded that he was responsible for at least 1.5 kilograms but less than 5 kilograms of a mixture or substance containing methamphetamine, resulting in a base offense level of 34. At sentencing, the district court determined that while there was enough in the record to support a higher drug quantity, a "very conservative" number would be at least 350 grams but less than 500 grams. This finding reduced Vinton's base offense level to 30. The court adjusted this level upward two levels for obstruction of justice, based on the court's conclusion that Vinton willfully and knowingly lied as to material matters at trial. The court sentenced him to 168 months of custody, which was at the top of the sentencing range for someone with Vinton's criminal history. However, the court also indicated that if the Sentencing Guidelines were found to be unconstitutional, the court would impose the even longer sentence of 180 months' imprisonment.

On appeal, Vinton challenges (1) the sufficiency of the evidence supporting the drug counts, (2) the district court's determination of the quantity of methamphetamine attributable to him, and (3) his two-level sentencing enhancement for obstruction of

-3-

justice. He also argues that the district court violated his Sixth Amendment right to have a jury make the findings on drug quantity and obstruction of justice.

## I.

Vinton contends that there was insufficient evidence to prove that he was guilty of conspiracy to distribute methamphetamine and of possession with the intent to distribute methamphetamine. This argument was preserved by his motion for judgment of acquittal at the close of the government's case. In reviewing sufficiency of the evidence claims, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility determinations made in support of the jury's verdict. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. McDougal, 137 F.3d 547, 553 (8th Cir. 1998). "We must uphold the verdict if any reasonable jury could have found the elements of the crime beyond a reasonable doubt." McDougal, 137 F.3d at 553. We will reverse only if the jury must have had a reasonable doubt about an essential element of the crime. Id.

In order to convict Vinton of conspiracy to distribute at least 50 grams of a mixture containing methamphetamine, the jury must have found beyond a reasonable doubt that (1) a conspiracy to distribute the methamphetamine existed; (2) Vinton knew about the conspiracy; and (3) he knowingly became a part of the conspiracy. United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999). Vinton argues that the government did not establish that he was an active member of the alleged conspiracy to distribute and that, at best, the government proved that he was in a buyer-seller relationship with members of the conspiracy. Evidence of a "single transient sales agreement" and small amounts of drugs consistent with personal use may indicate that a defendant is only involved in a buyer-seller relationship, rather than a member of the conspiracy. United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981). However, to reach such a conclusion there must be "no independent evidence tending to prove that the defendant had some knowledge of the broader conspiracy." Id. at 635

(quoting United States v. Agueci, 310 F.2d 817, 836 (2d. Cir. 1962)). We hold that a reasonable jury could have concluded that Vinton knew about and became a part of an illegal conspiracy to distribute at least 50 grams of a mixture containing methamphetamine.

Although evidence presented at trial demonstrated that Vinton was involved in Deherrerea's wider distribution ring, the government did not need to prove that Vinton was a part of this larger conspiracy in order to convict him of the conspiracy count as charged. It was sufficient that the jury conclude that Vinton was a part of the conspiracy to distribute methamphetamine to Randy Young in February 2003. A reasonable jury could have found that this specific transaction involved over 50 grams of a mixture containing methamphetamine, a substantial amount of drugs inconsistent with personal use, and that Vinton knew that by giving the drugs to Haas they would be further distributed to Young.

Deherrerea's testimony established that Young paid Deherrerea several thousand dollars in cash for at least four ounces (114 grams) of methamphetamine, but that Deherrerea had not delivered the drugs at the time of his arrest. Deherrerea testified that after his arrest he called Vinton's residence from jail because he was concerned that the methamphetamine intended for the transaction would be found in Deherrerea's house. Vinton's girlfriend, Lisa Brandt, answered the call and agreed to go retrieve the methamphetamine. Deherrerea later spoke with Alan Haas, who mentioned that Young was upset about not receiving his methamphetamine and was threatening Deherrerea's girlfriend, Amber Risius. Deherrerea told Haas to "talk to Richard," and instructed him to have Vinton give the drugs to Young. Haas called Vinton and told him that Young was harassing Risius over the undelivered methamphetamine. Vinton agreed to meet up with him and bring the drugs. They met at Haas's body shop and Haas testified that Vinton dropped off "a pretty good-sized chunk of stuff for me to give to Randy," which Haas estimated to be three to four ounces (approximately 85 to 114 grams). Vinton admitted in his own testimony that

his intention in bringing the methamphetamine over to Haas was for Haas to give it to Young so that Young would stop bothering Risius. In light of this testimony, it was reasonable for the jury to conclude that there was a conspiracy to distribute over 50 grams of a mixture containing methamphetamine to Young, that Vinton knew about the conspiracy, and that Vinton knowingly became a part of the conspiracy when he had the conversation with Haas about the methamphetamine and later delivered it to Haas's shop.

Vinton also challenges the sufficiency of the evidence underlying his conviction for possession with intent to distribute at least 50 grams of a mixture containing methamphetamine. However, his brief does not detail the grounds on which he appeals this conviction. As demonstrated above, a reasonable jury could have concluded that Vinton was guilty of possession with intent to distribute in light of his involvement in the Deherrerea-Young transaction. Based on Vinton's testimony that he took the methamphetamine from Brandt and delivered a portion of it to Haas, it was reasonable for the jury to conclude that Vinton possessed with the intent to distribute at least 50 grams of a mixture containing methamphetamine.

## II.

Vinton alleges that the district court erred in determining the quantity of methamphetamine attributable to him. Vinton objected to the calculation of the drug quantity in the Presentence Investigation Report, and therefore we review the district court's factual finding regarding the quantity of drugs for clear error. United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001). We can disturb this determination "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Titlbach, 300 F.3d 919, 923 (8th Cir. 2002).

In a drug conspiracy, a defendant is held responsible for all reasonably foreseeable drug quantities that were within the scope of the criminal activity that he jointly undertook. Id. The sentencing court must "find by a preponderance of the evidence that the activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him." United States v. Mickelson, 378 F.3d 810, 822 (8th Cir. 2004). If there are objections to the Presentence Investigation Report, the district court must make findings of fact and rule on those objections. United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992). The district court may consider any relevant information "as long as it has 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Atkins, 250 F.3d 1203, 1212 (8th Cir. 2001) (quoting U.S.S.G. § 6A1.3(a)). Testimony is not unreliable as a matter of law just because a witness is a co-conspirator or a cooperating witnesses. See, e.g., United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002); Atkins, 250 F.3d at 1213; United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998).

The Presentence Investigation Report concluded that Vinton was responsible for the total amount of methamphetamine (mixture) involved in the wider conspiracy: between 1.5 and 5 kilograms. At sentencing, Vinton objected to this quantity assessment and challenged some of the quantity recitations in the offense conduct statement in the Report. Specifically, he disputed the government's conclusion, based on Sarah Farmer's testimony, that he sold an ounce of methamphetamine to Travis Ziesman in July 2002. Vinton also claimed that the amounts that he traded with Deherrerea should not be linked to the conspiracy as they were exchanged for personal use. He denied the veracity of Troy Hill's testimony that he had purchased two to four "eight balls" of methamphetamine from Vinton on up to fifteen occasions. Finally, Vinton claimed that he was not involved in the intended distribution of methamphetamine from Deherrerea to Young in February 2003.

In response to Vinton's objections, the district judge stated that she did not believe testimony by Vinton and his witnesses that Vinton never sold methamphetamine to Hill or anyone else. She found, "He certainly sold and he did sell to Hill. That's my finding in spite of his testimony to the contrary." However, she took a more conservative approach to drug quantity than the Presentence Investigation Report and did not hold Vinton responsible for all quantities in the broader conspiracy. Rather, the judge limited the drug quantity assessment to the transactions in which Vinton was directly involved based upon the evidence presented at trial, and settled on at least 350 but less than 500 grams of a mixture or substance containing methamphetamine.

A review of the record demonstrates that the district court's quantity determination was not clearly erroneous. The portion of the methamphetamine from Deherrerea's house that Vinton allegedly gave to Alan Clapp, which Clapp then turned over to law enforcement, weighed 104.81 grams. Alan Haas testified to receiving approximately 85 to 114 grams from Vinton at his body shop, and Vinton admitted to delivering a chunk of methamphetamine to Haas. Although Vinton claimed he never sold methamphetamine to Troy Hill, Hill testified that he purchased two to four "eight balls" of methamphetamine (each weighing 3 ½ grams) from Vinton on fourteen or fifteen occasions, which amounts to at least 98 grams. Deherrerea testified to trading "eight balls" of methamphetamine with Vinton ten to fifteen times, which constitutes at least 35 grams. Finally, testimony from Sarah Farmer, Alan Clapp, and Randy Young implicated Vinton in a number of other purchases and sales of methamphetamine, which adds at least another 100 grams to the total. The district judge was entitled to rely on this testimony in making her determination, and we cannot say that the record definitely and firmly convinces us that she was mistaken in arriving at a quantity of between 350 and 500 grams of a mixture or substance containing methamphetamine.

## III.

Vinton also argues that the trial court erred in enhancing his sentence for obstruction of justice under Sentencing Guideline § 3C1.1. We review a district court's factual finding in support of a § 3C1.1 enhancement for clear error. United States v. Molina, 172 F.3d 1048, 1058 (8th Cir. 1991). We then conduct a de novo review of the district court's application of the Guidelines to those facts, giving "due deference to the district court's findings of fact." Id.

Sentencing Guideline § 3C1.1 provides for an upward adjustment of two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to the defendant's offense of conviction." U.S.S.G. § 3C1.1 (2003). Obstruction of justice under this provision includes committing, suborning, or attempting to suborn perjury. U.S.S.G. § 3C1.1, comment (n.4(b)). A witness commits perjury if he testifies falsely under oath about a material matter with a willful intent to deceive the fact finder. United States v. Dunnigan, 507 U.S. 87, 94 (1993).

The government bears the burden of proof in showing that the defendant committed perjury. United States v. Washington, 318 F.3d 845, 861 (8th Cir. 2003). To impose an enhancement for obstruction of justice, the district court must review the evidence and make an independent finding of perjury by a preponderance of the evidence, which cannot be based solely on the jury's disbelief of the defendant's testimony. United States v. Swick, 334 F.3d 784, 787 (8th Cir. 2003). If the district court identifies specific instances in which a defendant has falsely denied knowledge of or involvement in a conspiracy with the intent to cause the jury to find him not guilty, that is sufficient for a finding of obstruction of justice. United States v. Pena, 67 F.3d 153, 157 (8th Cir. 1995).

In light of the conflict between Vinton's trial testimony and other evidence presented at trial, the district court found that Vinton "willfully and knowingly lied during his trial testimony as to material matters" and that "[t]his wasn't a matter of him making a mistake or just being inaccurate." Relying on four specific portions of his testimony, the court concluded:

> I make the finding, based on my evaluation of his truthfulness, not solely on the jury's verdict but my own, independent of the jury evaluation of him, he was lying. He lied when he stated he did not attempt to persuade Amber Risius to provide false testimony to law enforcement concerning methamphetamine recovered from her house. I don't believe [Lisa Brandt]. He lied and provided false testimony concerning his involvement in the distribution of methamphetamine.
>
> I don't believe the prior witness either, that Mr. Vinton never sold to Troy Hill or anyone else. He certainly sold and he did sell to Troy Hill. That's my finding in spite of his testimony to the contrary.
>
> I also find he lied when he stated he did not intend to distribute methamphetamine retrieved from the Deherrerea house. And I find that he falsely denied he knowingly possessed firearms stored at Alan Clapp's home.

Vinton argues that these findings are not supported by the trial record. While Vinton is correct that the record does not reflect that he was specifically questioned about his contact with Amber Risius, he has not demonstrated that the district court's finding of perjury with respect to the other three items of testimony was clearly erroneous. The government provided evidence contradicting Vinton's statements about his sales to Troy Hill, his intention to distribute the methamphetamine from Deherrerea's house, and his possession of firearms stored at Alan Clapp's home. Vinton's claims are therefore inconsistent with both the jury verdict and other testimony, thus providing a basis for the district court's conclusion that Vinton perjured himself. See United States v. Briggs, 969 F.2d 689, 691 (8th Cir. 1992). The district court's findings were sufficient, and the two-level sentence enhancement for obstruction of justice was not clearly erroneous.

-10-

IV.

Vinton contends that the district judge's enhancement of his sentence based on her findings of drug quantity and obstruction of justice violated his Sixth Amendment rights. He argues that, under United States v. Booker, 125 S.Ct. 738 (2005), these facts should have been submitted to a jury and proved beyond a reasonable doubt. Vinton objected to the enhancements at sentencing based on the facts presented at trial, but did not raise a specific Sixth Amendment challenge at that point. As a result, we conduct plain error review under the four-part test of United States v. Olano, 507 U.S. 725 (1993). United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005). Under that test, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights," and we may remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 466-67 (1997).

The district judge did not instruct the jury to find the specific quantity of drugs attributable to Vinton or to find whether Vinton committed perjury beyond a reasonable doubt. The Supreme Court held in Booker that "[a]ny fact, (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by . . . a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S.Ct. at 756. Consequently, the court's imposition of enhancements based on judge-found facts under a mandatory Guidelines regime was an error that was plain under the Sixth Amendment. See United States v. Keller, 413 F.3d 706, 710 (8th Cir. 2005); United States v. Galaviz-Luna, 416 F.3d 796, 801 (8th Cir. 2005); United States v. Alexander, 408 F.3d 1003, 1011 (8th Cir. 2005). In order to show that this plain error affected Vinton's substantial rights, he must show a "'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." Pirani, 406 F.3d at 552.

Vinton has not demonstrated that he was prejudiced by the two-level enhancement for obstruction of justice and the increased quantity determination of 350 to 500 grams from the "50 or more" grams found by the jury. The statutory sentences for the two drug counts Vinton was convicted of both range from a mandatory minimum of ten years in federal prison up to forty years' imprisonment. 21 U.S.C. § 841(b)(1)(B) (2000). The judicial fact findings did not result in a sentence outside of this statutory range. Furthermore, the district judge explicitly recognized at sentencing that there was a possibility that the Guidelines would be found unconstitutional, so she indicated what her alternative sentence would be if Vinton's sentence were within her sole discretion. She stated that she would impose 180 rather than 168 months of custody, based on "the nature and circumstances of the offense and the history and characteristics of the Defendant." Thus, the record as a whole does not indicate that the district court would have imposed a more favorable sentence under the new sentencing regime. To the contrary, it shows that Vinton would be very likely to receive a higher sentence. Because he cannot establish the substantial rights part of the Olano test, we hold that the district court did not plainly err in sentencing Vinton.

For the foregoing reasons, we affirm Vinton's conviction and sentence.

_____