# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-2286

_____

United States of America,

    Plaintiff - Appellee,

v.

Isidro Plancarte-Vazquez, also known
as Isidro Plancarte-Rueda,

    Defendant - Appellant.

_____

No. 05-2387

_____

United States of America,

    Plaintiff - Appellee,

v.

Manuel Plancarte,

    Defendant - Appellant.

Appeals from the United States
District Court for the Northern
District of Iowa.

_____

Submitted: March 14, 2006
Filed: June 27, 2006

_____

Before ARNOLD, JOHN R. GIBSON, and SMITH, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Manuel Plancarte and his son, Isidro Plancarte-Vazquez, pled guilty to conspiracy to distribute 15,000 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 and possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The district court sentenced Plancarte to 275 months' imprisonment and sentenced Plancarte-Vazquez to 168 months' imprisonment. Both appeal their sentences. We affirm the district court's judgment as to Plancarte, but vacate the judgment and remand for resentencing as to Plancarte-Vazquez.

Based on information that an individual named Lori Perez was involved in the illegal sale of narcotics, officers executed a search warrant at her residence in Sioux City, Iowa, where they arrested her after uncovering drug paraphernalia and a small amount of methamphetamine. During an interview following her arrest, Perez told officers that Isidro Plancarte-Vazquez and his father, Manuel Plancarte, were the sources of the methamphetamine and claimed that she had purchased approximately 50 pounds (22,680 grams) of methamphetamine and 15 to 20 pounds (5,443.2 to 9,072 grams) of marijuana from them.

Following an investigation involving several controlled buys and a traffic stop, Plancarte and Plancarte-Vazquez were indicted and charged with conspiracy to distribute 15,000 grams or more of methamphetamine and possession with intent to distribute 50 grams or more of methamphetamine. The defendants pled guilty to both counts of the indictment, and the matter proceeded to sentencing, where the parties argued four guideline issues: (1) drug quantity; (2) offense role; (3) enhancement for use or attempted use of a minor; and (4) acceptance of responsibility.

At sentencing, the government presented three witnesses: Steven Hamel, Tony Wingert, and Lori Perez. Hamel was Lori Perez's former boyfriend, and he testified that from the spring of 2003 until Perez's arrest on October 21, 2003, he saw Plancarte-Vazquez selling about 10 pounds of methamphetamine to Perez and witnessed Plancarte selling about five pounds of methamphetamine to Perez. During these transactions, which would take place at Perez or Plancarte's house, Perez would hand the money to Plancarte-Vazquez, who would count it; then Plancarte would take the package of drugs out of the front of his pants and hand it to Perez or to Plancarte-Vazquez, who would hand the package to Perez.

Perez, who pled guilty to conspiracy to distribute 500 grams or more of methamphetamine, was the government's main witness at sentencing. She testified that it was her belief that Plancarte was in control of the business. She testified that Plancarte-Vazquez would have to ask his father for permission to sell drugs to her. Also, when Plancarte went back to Mexico, he would often call Plancarte-Vazquez to check on him, and on occasion would send another son from Mexico to Sioux City to watch over the operation. Occasionally, Plancarte would cut his son off from selling methamphetamine by sending him back to Mexico, or would get upset with him and chastise him for mismanaging the business. Perez also testified that she was aware that other people worked for Plancarte because at times she would accompany him and Plancarte-Vazquez to other houses in order to obtain methamphetamine, or she would have to go into another room when other people arrived during her methamphetamine transactions with Plancarte. Perez also testified that Plancarte would tell her how to make more money on the methamphetamine he was selling to her and would warn her about having a lot of people coming to her house to buy methamphetamine.

Wingert, a deputy sheriff with the Woodbury County Sheriff's Department, testified at sentencing about the investigation into the activities of Plancarte and his son. Wingert testified that, at least six months before the defendants' arrest, Perez had

identified both defendants and admitted to being involved in buying more than 50 pounds of methamphetamine with them, an amount consistent with that Perez testified to at sentencing. In addition, Wingert relayed information he had received from an informant during the course of his investigation, who claimed to have received approximately 10 pounds of methamphetamine from the defendants and who corroborated other information provided by Perez.

Based on the evidence presented at sentencing, the district court found Plancarte responsible for at least 30,000 kilograms of marijuana equivalent, for a base offense level of 38.[1] The court imposed a three-level enhancement for Plancarte's role as a manager or supervisor of a criminal activity involving five or more participants, see U.S.S.G. § 3B1.1(b), and a two-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(a), for an adjusted offense level of 39. The court rejected the government's request for an enhancement for the use or attempted use of a minor to commit the offense, finding the record to be unclear regarding his direction or use of his son, Plancarte-Vazquez, during the early years of the conspiracy when the uncle was more involved than Plancarte. With a criminal history category of I, the advisory guidelines sentencing range was from 262 to 327 months' imprisonment. The court sentenced Plancarte to 275 months' imprisonment on each count, to be served concurrently, five years of supervised release on each count, to be served concurrently, and a $200 special assessment.

The district court found Plancarte-Vazquez responsible for "at least 10,000 kilograms of marijuana equivalent," but then found that this amount called for an

_____

[1]As set forth in U.S.S.G. § 2D1.1, comment. (n. 10) (2004), when a case involves multiple drug types—here, methamphetamine and marijuana—the drugs are converted to marijuana equivalent to determine the defendant's base offense level. See United States v. Lopez-Arce, 267 F.3d 775, 782 n.4 (8th Cir. 2001).

offense level of 38, the same as that given to Plancarte based on a drug quantity calculation of 30,000 kilograms. After receiving a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(b) and with a criminal history category of I, the guidelines sentencing range for Plancarte-Vazquez was between 168 and 210 months' imprisonment. The district court sentenced him to 168 months' imprisonment on each count, to be served concurrently, five years of supervised release on each count, to be served concurrently, and a special assessment of $200.

## I.

Plancarte first challenges the district court's drug quantity calculation, which we review for clear error. United States v. Vinton, 429 F.3d 811, 816-17 (8th Cir. 2005). "The government bears the burden of proving drug quantity by a preponderance of the evidence." United States v. Marshall, 411 F.3d 891, 894-95 (8th Cir. 2005).

Plancarte argues that the quantity of drugs attributed to him was clearly erroneous because the government's main witness on that issue, co-conspirator Lori Perez, provided uncertain and inconsistent estimates of the quantities of drugs involved in the conspiracy. When calculating drug quantity in the context of a narcotics trafficking conspiracy, the sentencing court may consider all transactions known or reasonably forseeable to the defendant that were made in furtherance of the conspiracy. See United States v. Mickelson, 378 F.3d 810, 821-22 (8th Cir. 2004); U.S.S.G. § 1B1.3(a)(1)(B). It is well-established that the testimony of co-conspirators may be sufficiently reliable evidence upon which the court may base its drug quantity calculation for sentencing purposes. Mickelson, 378 F.3d at 821. Moreover, "[a] district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." United States v. Killingsworth, 413 F.3d 760, 763 (8th Cir. 2005), cert. denied, 126 S.Ct. 633 (2005); see also Mickelson, 378 F.3d at 822 ("sentencing court's assessment of the credibility of a witness is nearly unreviewable.") (quotation marks omitted).

Here, the district court based its drug quantity calculation on Perez's testimony that Plancarte and his co-conspirators had supplied her with more than 50 pounds (22,680 grams) of methamphetamine and at least 15 pounds of marijuana (5,443.2 grams) over the course of the conspiracy. The presentence report converted these amounts into 45,365.44 kilograms of marijuana equivalent. See U.S.S.G. § 2D1.1, comment. (n. 10). While the court acknowledged "some level of uncertainty and inconsistency" with regard to Perez's testimony, the court stated that it could find from the testimony that the quantity of drugs involved substantially exceeded the 30,000 kilogram threshold required to reach a base offense level of 38, even if it was insufficient for the court to find the much greater quantity recommended in presentence report. See U.S.S.G. § 2D1.1(c)(1). The court did not commit clear error by crediting Perez's testimony, and that testimony provided sufficient support for the court's drug quantity calculation.

Next, Plancarte argues that there was insufficient evidence to warrant the role enhancement he received for being a supervisor or manager of a drug trafficking conspiracy. The Sentencing Guidelines provide for a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Plancarte does not dispute the sentencing court's finding that the instant drug trafficking conspiracy involved at least five participants—Plancarte, Plancarte-Vazquez, Plancarte's other son, an uncle, and Lori Perez. Nor does he dispute the district court's alternative finding that the conspiracy was "otherwise extensive" in that it involved "a significant amount of drugs over a substantial period of time involving a number of people with a constant connection between this country and the country of Mexico." Accordingly, the only issue with respect to the three-level enhancement is whether the district court erred in finding that Plancarte was a "manager or supervisor."

We review the district court's determination that Plancarte was a "manager or supervisor" for clear error, with the burden on the government to prove by a preponderance of the evidence that an enhancement was warranted. United States v. Mesner, 377 F.3d 849, 851 (8th Cir. 2004). For a sentencing court to impose a managerial or supervisory role enhancement there must be sufficient evidence from which to find that the defendant "controlled at least one other participant in the drug trafficking offense." Id. at 851-52 (quoting United States v. Yerkes, 345 F.3d 558, 563 (8th Cir. 2003)); United States v. Padilla-Pena, 129 F.3d 457, 470 (8th Cir. 1997). Here there was sufficient evidence from which the court could make such a finding.

At sentencing, Lori Perez testified that she purchased approximately 50 pounds of methamphetamine and 15 pounds of marijuana from defendants or Plancarte-Vazquez's uncle, that she helped Plancarte-Vazquez wire drug proceeds to Plancarte in Mexico, and that Plancarte sent his older son from Mexico to supervise Plancarte-Vazquez's operation in Sioux City. She also stated that Plancarte-Vazquez had to get permission from Plancarte to sell drugs to her, and that Plancarte would tell her how to conduct her business. Plancarte would also get upset with his son and cut him off from selling and send him back to Mexico. All of this supported Perez's belief that it was Plancarte who was "more in control of everything," which in turn supported the district court's finding that Plancarte controlled at least one of the four other people involved in the conspiracy.

In response, Plancarte points to aspects of Perez's testimony suggesting that he was merely a distributor and that he did not exercise sufficient managerial or supervisory control. For example, Perez admitted on cross-examination that she had no idea whether it was Plancarte or another relative who was the actual "leader" of the family's drug business. To be sure, one's status as a distributor of narcotics would not, standing alone, transform one into a manager or supervisor. United States v. Bahena, 223 F.3d 797, 804 (8th Cir. 2000); see also United States v. Willis, 433 F.3d 634, 636

(8th Cir. 2006) ("In a drug conspiracy case, 'a defendant must do more than sell for resale' to be found an organizer or leader.") (quotation marks omitted). But neither is the government required to prove the defendant controlled his co-conspirators' every movement to find that he occupied a leadership role. United States v. Pitts, 173 F.3d 677, 681-82 (8th Cir. 1999). Instead, "it is enough if the defendant assumed organizing or leadership functions such as recruiting others, determining the price or location of sales, and so forth." Willis, 433 F.3d at 636.

Based on the record before it, the district court found that Plancarte was more than a mere distributor; he "was in fact a manager or supervisor" and performed functions associated with such a role within the organization. As discussed previously, this finding enjoyed considerable support from the testimony of Lori Perez. Although aspects of her testimony could support a contrary finding, "[w]here there are two permissible views of the evidence, the district court's choice between the two cannot be clearly erroneous." United States v. Wells, 127 F.3d 739, 745 (8th Cir. 1997) (citing Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)). Finding no clear error with respect to the court's role determination, we affirm Plancarte's sentence.

## II.

Plancarte-Vazquez challenges the district court's drug quantity calculation. Because he did not object to this calculation at sentencing, we review his claim for plain error. United States v. Nace, 418 F.3d 945, 946 (8th Cir. 2005). We will correct a plain error only if it affected his substantial rights and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Warren, 361 F.3d 1055, 1058 (8th Cir. 2004) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

Here, we have no trouble concluding that the district court committed plain error by reaching a base offense level that was not supported by its drug quantity finding.  At sentencing the district court found Plancarte-Vazquez responsible for "at least 10,000 kilograms of marijuana equivalent," but then concluded that this amount called for an offense level of 38.[2]  This was error, since an offense level of 38 must be supported by a finding of at least 30,000 kilograms of marijuana equivalent, see U.S.S.G. § 2D1.1(c)(1), while a finding of at least 10,000 kilograms, without more, would only support a base offense level of 36, see U.S.S.G. § 2D1.1(c)(2).

Plancarte-Vazquez argues that this plain error affected his substantial rights because his sentence of 168 months' imprisonment was greater than that he would have received absent the error.  He points out that with a criminal history category of I, his adjusted offense level based on the quantity of drugs the district court actually found would have resulted in a guidelines range of 135 to 168 months' imprisonment, but due to the district court's error in setting his offense level he was subject to a range of 168 to 210 months' imprisonment.  U.S.S.G. Chapter 5 Part A.  Plancarte-Vazquez

---

[2]In this regard the district court stated:

> Accordingly, for the court to conclude, based upon the testimony that has been offered, that we have what amounts to almost 55,000 kilograms of marijuana equivalent, which is what would be used to determine the base offense level, it is pretty hard for the court to conclude on this record that that number or a number particularly close to it would be an accurate number.  However, it is not necessary for the court to do that.  The court need only determine that the record supports at least 10,000 kilograms of marijuana, and this record clearly supports a level of drug involvement at that level.  So I have no difficulty finding that the base level is supported based upon the record that has been provided to me at an offense level 38, even though the court is not able to find on this record the specific amount in excess of that figure.

contends that he suffered prejudice when the district court sentenced him at the bottom of the higher guideline range, even though his sentence of 168 months' was within the lower guidelines range applicable to the drug quantity finding the district court actually made.

"In a number of cases, we have granted plain error review when the district court applied the wrong mandatory guidelines range because of clerical or other errors." United States v. Pirani, 406 F.3d 543, 553-54 (8th Cir. 2005) (en banc) (citing Warren, 361 F.3d at 1059; United States v. Weaver, 161 F.3d 528, 530 (8th Cir. 1998) (per curiam); and United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998)); cert. denied, 126 S.Ct. 266 (2005). In Weaver, we exercised our discretion to remand for resentencing where a plain typographical error affected the sentencing guideline range, even though, as here, the sentence the district court imposed fell within both the correct and the incorrect guideline ranges. We were unwilling to say that the defendant's substantial rights were not affected by the error, because a review of the record persuaded us that the district court "might well have sentenced Weaver to a lesser term of imprisonment under the range that would have applied but for the typographical error." Id. at 530. Furthermore, we reasoned that an exercise of our discretion to correct the plain error was appropriate since "the public's confidence in the judicial process would be undermined if an inadvertent typographical error were to be allowed to influence the length of a criminal defendant's sentence." Id.

More recently and for essentially the reasons stated in Weaver, we exercised our discretion to remand for resentencing where an increased sentence resulted from an "obvious guideline computation error." Warren, 361 F.3d at 1059-60. Unwilling to speculate as to what sentence the defendant would have received absent the plain error, we found in the record "enough ambiguity to conclude that the district court 'might well' have arrived at a lesser term of imprisonment." Id. at 1059 (quoting Weaver, 161 F.3d at 530). We also concluded that "the public's confidence in the

judicial process would be undermined as much when an increased sentence results from an obvious guideline computation error as from an obvious typographical error," and accordingly exercised our discretion to remand.  Id.

The mismatch here between the drug quantity finding and the offense level is akin to the obvious guideline computation and typographical errors that justified remands in Weaver and Warren.  Although the government argues that Plancarte-Vazquez suffered no prejudice because the district court "obviously intended to say 'at least 30,000 kilograms of marijuana equivalent'" as required to support the offense level it announced, our review of the record reveals that this conclusion is not so obvious.  In determining the appropriate sentence, the court expressed its concerns with the precision and accuracy of the testimony of Lori Perez, the government's "key witness" on the issue of drug quantity.  Moreover, the district court specifically stated that it was imposing a sentence at the bottom of the guideline range it applied in order "to accommodate the unique circumstances of your lack of criminal history and the influence that your family apparently had on you in this case."  Lastly, the district court's assignment of an offense level to Plancarte-Vazquez, the son, that was equal to the offense level it assigned to Plancarte, the father and recipient of a leadership role enhancement, at least suggests that the district court "might well" have meant what it said with respect to the drug finding, as opposed to the offense  level.

On this record, "we believe there is enough ambiguity to conclude that the district court 'might well' have arrived at a lesser term of imprisonment," and, if so, the public's confidence in the judicial process would be undermined if the greater term is left intact.   Warren, 361 F.3d at 1059 (quoting Weaver, 161 F.3d at 530). Accordingly, we exercise our discretion to remand for resentencing, but in doing so, express no opinion as to what sentence the district court should impose, nor do we address Plancarte-Vazquez's remaining arguments on appeal, as they may not arise at resentencing.

## III.

We affirm the conviction and sentence of Manuel Plancarte, but vacate the judgment with respect to Isidro Plancarte-Vazquez and remand for further proceedings consistent with this opinion.

_____