# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2699

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Derek Isaac Allmon, Sr., | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: April 12, 2007
Filed: August 27, 2007

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Derek Isaac Allmon, Sr., appeals his conviction, sentence, and fine, contending the district court[1] erred by not ordering a trial continuance, in determining his sentence, and by imposing a fine. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable William R. Wilson, Jr., United States District Court Judge for the Eastern District of Arkansas.

I.

Allmon and several co-defendants were indicted for drug trafficking and attempting to kill witnesses. Allmon retained Ralph M. Cloar, Jr., who had represented Allmon in various cases for 20 years.

Shortly before a hearing on March 10, 2006 – eleven days before trial – Cloar moved to withdraw from the case. He claimed Allmon accused him of encouraging some co-defendants to testify against him. Allmon had "no objections" to the court appointing a new lawyer and ordering Cloar to be co-counsel. Allmon acknowledged that a new attorney would have about 10 days to prepare for trial. Cloar explained to the court:

> I am familiar enough with the case that with a week or so with the other – with whoever you appoint and if they are an experienced defense attorney, I don't think that they would have any trouble getting up to speed. This is not a case that has a lot of real serious legal issues in it. It's a lot of he said, she said.

The court ordered Cloar to remain Allmon's attorney until a new counsel was appointed and got "his sea legs."

On March 14, B. Dale West was appointed Allmon's counsel, with Cloar as co-counsel. The government gave West early access to documents covered under the Jencks Act, 18 U.S.C. § 3500, to review over the weekend before trial. On March 17, West moved for a continuance, requesting one additional day to further review the documents. On March 21, the first day of trial, West withdrew the motion.

After the first week of trial, the court found, "Mr. West is able to represent Mr. Allmon on his own," and granted Cloar's motion to withdraw. A jury ultimately found Allmon guilty on all counts. He appeals.

II.

Allmon argues that the "district court erred by not granting an extended continuance in this case." District courts have broad discretion when ruling on requests for continuances. *See **United States v. Urben-Potratz***, 470 F.3d 740, 743 (8th Cir. 2006). Continuances generally are not favored and should be granted only for a compelling reason. ***United States v. Vesey***, 330 F.3d 1070, 1072 (8th Cir. 2003). This court "will reverse a district court's decision to deny a motion for continuance only if the court abused its discretion and the moving party was prejudiced by the denial." ***Urben-Potratz***, 470 F.3d at 743.

Here, the government gave West early access to review Jencks Act material before trial. Although West filed a motion for a continuance, he withdrew it on the day of trial. The district court did not abuse its discretion or commit plain error by not ordering a continuance *sua sponte*. *See **United States v. Steffen***, 641 F.2d 591, 595 (8th Cir. 1981) (rejecting the argument that the court should have continued trial when defendant had not properly requested a continuance, nor "alleged any facts which would constitute plain error or abuse of discretion in the court's not ordering a continuance *sua sponte*"); *see also **United States v. Coney,*** 51 F.3d 164, 166 (8th Cir. 1995) (when defendant "stated explicitly that she would not request such a continuance," the court found "neither an abuse of discretion nor plain error in the trial court's failure to order a continuance *sua sponte*").

III.

Allmon contends that the district court erred in concluding that his base offense level was 38, in violation of rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure.[2] He challenges the court's factual findings that he was criminally

---

[2]Fed. R. Crim. P. 32(i)(3)(B) provides: "At sentencing, the court . . . must— for any disputed portion of the presentence report or other controverted matter— rule on

responsible for all the drugs involved in the conspiracy, and that his relevant conduct included the possession and/or distribution of more than 150 kilograms of cocaine.

This court reviews "the district court's factual finding regarding the quantity of drugs for clear error." *United States v. Vinton,* 429 F.3d 811, 816-17 (8th Cir. 2005); *see also United States v. Plancarte-Vazquez,* 450 F.3d 848, 852 (8th Cir. 2006). "The district court's drug quantity determination will be reversed only if the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Davidson,* 195 F.3d 402, 410 (8th Cir. 1999). "In a drug conspiracy, a defendant is held responsible for all reasonably foreseeable drug quantities that were within the scope of the criminal activity that he jointly undertook." *Vinton,* 429 F.3d at 817. The government bears the burden of proving the quantity by a preponderance of the evidence. *See Plancarte-Vazquez,* 450 F.3d at 852.

The presentence report (PSR) identified Allmon as the leader of a organization involved in drug trafficking. Allmon objected to this finding. The district court concluded by a preponderance of evidence that "he was the ringleader based on the testimony." The court was also "willing to find" he was the ringleader "beyond a reasonable doubt, if that was required." Contrary to Allmon's argument, the court determined that Allmon was responsible for all the drugs involved in the conspiracy and made an independent finding "based on the testimony" apart from the PSR.

As to the specific amount, the court heard testimony from at least 16 witnesses, including several co-conspirators, that Allmon distributed 330 kilograms of cocaine. *See United States v. Sarabia-Martinez,* 276 F.3d 447, 450 (8th Cir. 2002) ("A sentencing court may determine drug quantity based on the testimony of a co-conspirator alone."); *Plancarte-Vazquez,* 450 F.3d at 852 ("It is well-established that the testimony of co-conspirators may be sufficiently reliable evidence upon which

the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

the court may base its drug quantity calculation for sentencing purposes."). A probation officer summarized the trial testimony, testifying that "the base offense level would be 38, based on it being more than 150 kilograms of cocaine." When the court asked counsel whether either side "wish to examine" the officer, both sides responded, "No, your Honor." The court later reiterated: "If I didn't make it clear, I'll make it clear now: Based on the summary of the amounts, I find that there was at a minimum more than 150 kilos involved."

Again, the district court made independent findings, over Allmon's objection, based on the testimony of co-conspirators. *Plancarte-Vazquez,* 450 F.3d at 852. The court's findings were not vague or conclusory. The court complied with Rule 32(i)(3)(B) and did not commit clear error. *See United States v. Davis,* 471 F.3d 938, 950 (8th Cir. 2006) ("The District Court satisfies Rule 32(i)(3)(B) if it makes a clear statement indicating it was relying on its impression of the testimony of the witnesses at trial, coupled with its specific rejection of the defendant's quantity objections.").

IV.

Allmon asserts that the district court's findings are insufficient to sustain enhancements to the base offense level. This court reviews the district court's factual findings regarding enhancements for clear error. *See United States v. Wintermute,* 443 F.3d 993, 1004 (8th Cir. 2006); *United States v. Jourdain,* 433 F.3d 652, 658 (8th Cir. 2006).

By Section 3B1.1 of the United States Sentencing Guidelines (USSG), an offense level increases four levels if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Forty government witnesses testified at trial; nineteen were involved in his drug conspiracy. The court's finding that Allmon "was the leader of an organization that involved five or more participants" is not clearly erroneous. *See Vinton,* 429 F.3d at

817 ("Testimony is not unreliable as a matter of law just because a witness is a co-conspirator or a cooperating witnesses.").

The court also found that Allmon obstructed justice, a two-level enhancement. Under USSG § 3C1.1, a defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused. The testimony established that a co-conspirator stole documents from a motel front desk, which were prepared for a detective investigating Allmon. The co-conspirator testified he delivered the documents to Allmon at the motel. The district court concluded: "I think the facts established that was an act of a co-conspirator made in the furtherance of the conspiracy, and in the course and scope of it." This conclusion that Allmon obstructed justice is not clearly erroneous. *See United States v. Frank,* 354 F.3d 910, 923 (8th Cir. 2004) ("We review the imposition of the enhancement for clear error. . . . We extend great deference to the district court's decision to grant an enhancement for obstruction of justice.").

Allmon challenges the two-level enhancement for using a minor to commit a crime. Under USSG § 3B1.4, this applies if "the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." Allmon's nephew testified that he was about 16 years old and in high school when he started trafficking for Allmon, transporting drugs from Texas to Arkansas, and delivering the proceeds to him. The enhancement for using a minor to distribute drugs is not clearly erroneous.

Allmon disputes the court's finding that a witness suffered permanent or life-threatening injuries, enhancing his sentence four levels. The witness, initially involved in trafficking with Allmon, decided to assist the government's investigation. The witness then was shot in the neck and torso by masked assailants. He was hospitalized and placed on a ventilator, with one bullet unremovable. The district court's finding that the witness's injury "was life threatening, without any doubt" is not clearly erroneous. *See United States v. Miner,* 345 F.3d 1004, 1006 (8th Cir.

2003) ("The victim's permanent scar from removal of a bullet from his neck and the presence of a bullet inside his body supports the permanent injury enhancement.").

Allmon attacks the court's finding that the attempted murder of the witness involved the offer or receipt of anything of pecuniary value. The court heard testimony that Allmon conspired with his nephew to pay $20,000 and a kilogram of cocaine to "Little Bloody" to kill the witness. The court did not believe Allmon that he "had nothing to do with any pecuniary value being given." *See **Plancarte-Vazquez,*** 450 F.3d at 852 ("a district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility"). The court did not err in assessing this four-level enhancement.

V.

Allmon contends the district court erred in sentencing him to life imprisonment on counts 7, 13, and 14, which relate to attempts to kill witnesses. The court determined that a mandatory life sentence was applicable to those counts based on his prior convictions under 18 U.S.C. § 3559(c)(1)(A)(ii). Allmon asserts the court erred because the government did not disclose his prior convictions before trial. The government concedes, "It is true that no such notice was filed." It counters, however, that "disregarding counts 7, 13 and 14, the defendant received a life sentence anyway" on the other counts.

Allmon did not object to the life sentence determination. "Without an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error." ***United States v. Collins,*** 340 F.3d 672, 682 (8th Cir. 2003), *quoting **McKnight v. Johnson Controls, Inc.,*** 36 F.3d 1396, 1407 (8th Cir. 1994); *see also **United States v. Beck,*** 250 F.3d 1163, 1166 (8th Cir. 2001), *citing **United States v. Fountain,*** 83 F.3d 946, 949 (8th Cir. 1996) ("an error not argued to the district court is grounds for reversal only if the error prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected"). "Plain error review is extremely narrow and is limited to those errors

which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." *Beck,* 250 F3d at 1166.

The district court sentenced Allmon to "imprisonment for a term of life on Counts 1, 2, and 7 through 14 . . . all to run concurrently." The district court erred in finding that counts 7, 13, and 14 required a mandatory sentence of life imprisonment because the government did not file notice of prior convictions under 18 U.S.C. § 3559. *See Neary v. United States,* 998 F.2d 563, 565 (8th Cir. 1993) ("the government must timely file an information . . . before a prior conviction may be used to enhance a sentence"). The error, however, was harmless because the court also sentenced him to imprisonment for life on counts 1, 2, and 8 to 12 – to run concurrently. *See Beck,* 250 F.3d at 1166. Allmon is unlike the defendant in *Neary*, who was harmed by receiving a sentence in excess of the maximum authorized by law when the government failed to file an information. *Neary*, 998 F.2d. at 566. Here, disregarding counts 7, 13, and 14, life imprisonment was properly imposed on Allmon. His substantial rights were not prejudiced and there was no miscarriage of justice. *See United States v. Parker,* 267 F.3d 839, 844 (8th Cir. 2001) ("We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected.").

VI.

The final issue is the $100,000 fine. "A district court's imposition of a fine and the determination of the amount of the fine will not be reversed unless clearly erroneous." *United States v. Berndt,* 86 F.3d 803, 808 (8th Cir. 1996); *see also United States v. Turner,* 975 F.2d 490, 498 (8th Cir. 1992). Because Allmon did not object at the hearing, this court "cannot reverse the district court unless its actions are plain error." *United States v. Gladfelter,* 168 F.3d 1078, 1083 (8th Cir. 1999).

Under USSG § 5E1.2(a), the district court shall impose a fine "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In determining the amount of the fine, the court must

consider eight factors.[3]  "The district court need not provide detailed findings under each of the factors listed above, but must provide enough information on the record to show that it considered the factors above so that the appellate court can engage in meaningful review."  *See Berndt,* 86 F.3d at 808.

The district court here stated: "Under the guidelines, the fine range for the offense is $25,000 to $8 million.  In this case, the defendant did not file a financial report, and I think the guidelines require that I fine him when there's no financial report."  The PSR says that "the defendant refused a presentence interview and did not sign authorization for the release of information."  Therefore, the finding that Allmon "did not file a financial report" constitutes a finding that he "refused" to do so.

Allmon emphasizes that the district court must consider his financial condition before setting the amount of the fine.  *See United States v. Patient Transfer Serv. Inc.,* 465 F.3d 826, 827 (8th Cir. 2006) ("A sentencing court must make specific factual findings on the record demonstrating that it has considered the defendant's ability to pay the fine."); *Berndt,* 86 F.3d at 808 ("It is incorrect for a court to impose a fine that the defendant has little chance of paying."); *see also United States v. Magee,* 19 F.3d 417, 425 (8th Cir. 1994) ("The language of the guidelines is mandatory with respect to the factors that the trial court must consider before imposing a fine.").

---

[3] (1) The need for the combined sentence to reflect the seriousness of the offense; (2) any evidence presented as to the defendant's ability to pay the fine . . . in light of his earning capacity and financial resources; (3) the burden that the fine places on the defendant and his dependents relative to alternative punishments; (4) any restitution or reparation that the defendant has made or is obligated to make; (5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct; (6) whether the defendant has been fined for a similar offense; (7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and (8) any other pertinent equitable considerations.  **USSG § 5E1.2(d)**.

It is also true that this court vacates fines when the district court does not make findings regarding the defendant's ability to pay. *See, e.g.*, **United States v. Van Brocklin,** 115 F.3d 587, 602 (8th Cir. 1997) (vacating defendant's fine because "the district court did not make required findings of fact showing that it considered the [defendant's] . . . ability to pay, in imposing a $10,000 fine . . . . Such findings are mandatory"); **United States v. Bauer,** 19 F.3d 409, 413 (8th Cir. 1994) ("Because the record does not reflect how the district court performed that task in imposing Bauer's large fine, we are unable to provide meaningful appellate review. Therefore, we conclude that we must vacate Bauer's fine and remand for redetermination."); **United States v. Granados,** 962 F.2d 767, 775 (8th Cir. 1992) (remanding to the district court "to make specific findings of fact concerning whether Mora has assets sufficient to pay or work off the $20,000 fine assessed"). *See generally* **Gladfelter,** 168 F.3d at 1083 ("specific findings with regard to [defendant's] ability to pay . . . . has often been the critical factor in our cases").

In this case, however, Allmon refused to provide a financial report, or otherwise show he could not pay the fine. The Sentencing Guidelines place the burden on the defendant to establish that he cannot pay the fine. *See* **USSG § 5E1.2(a)**. The record indicates Allmon's ability to pay a $100,000 fine. As the district court found, "Allmon was the leader of an organization" that distributed "at a minimum more than 150 kilos [of cocaine]." The district court did not commit plain error in imposing a fine when Allmon did not establish that he cannot pay the fine, and the record indicates his ability to pay it. *See* **Berndt,** 86 F.3d at 808 (upholding fine when "there is substantial evidence that the defendant attempted to conceal assets from the government"); *cf.* **USSG § 5E1.2 comment n.6**.

## VII.

The judgment of the district court is affirmed.

_____

-10-