# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2987

_____

United States of America

*Plaintiff - Appellee*

v.

Ryan Charles Brown

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 15, 2018
Filed: February 7, 2019
[Unpublished]

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A September 2016 indictment charged Ryan Charles Brown and Darren Matthew Rime with conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Each pleaded guilty to possession with intent to distribute; Rime testified for the government at Brown's

evidentiary sentencing hearing. The district court[1] found by a preponderance of the evidence that Brown was responsible for 500 grams or more of cocaine, increasing his base offense level to 24, see USSG § 2D1.1(c)(8), and resulting in an advisory guidelines sentencing range of 57 to 71 months imprisonment. The district court imposed a sixty-month sentence. Brown appeals, arguing the court clearly erred in failing to find that he was only responsible for less than 50 grams of cocaine, resulting in a substantively unreasonable sentence. See United States v. Johnson, 619 F.3d 910, 920-21 (8th Cir. 2010) (standard of review). We affirm.

The government's first witness at the evidentiary hearing was New Brighton Police Officer Theodore Layton, a narcotics investigator who participated as case agent in a May 13, 2016 warrant search of Rime's town home in suburban Minneapolis. Layton testified that, when the police broke through the front door, Rime was about five feet from the door and Brown was standing just outside a bathroom and a few steps from the kitchen. The first officer to enter heard the bathroom toilet flushing; Layton quickly entered the bathroom and found a bag containing a white, partially-dissolved substance inside the toilet bowl. In the kitchen, the police found scales, a half-empty can of acetone, 368 grams of cocaine cooking on low heat inside the oven, 196 grams of cocaine drying on a paper towel on the kitchen counter, and 8 grams of cocaine in two plastic bags on the stove. The police also found 499 grams of cocaine in a toolbag on a chair in the kitchen area and 19 grams of cocaine inside Brown's pant leg around his ankle.

Co-defendant Darren Rime, the government's other witness, testified that he met Brown in late 2014 or early 2015. At some point, Brown began helping Rime "stretch" his cocaine to increase its volume. To do this, Brown would smash the cocaine into powder and mix it with acetone and inositol, a "pseudo vitamin" used

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

for this illicit purpose. Brown then would cook the mixture in the oven, lay it out on a paper towel to cool, and bag it. On May 12, 2016, Rime received one kilogram of cocaine from a Mexican supplier and texted Brown that a new shipment was ready for him to stretch. Brown replied:

> Close. I'm not coming until it's me and you. And no visitors when we start. But might run out of time.

Rime testified that, when Brown came on May 13, they set aside 499 grams to process later and were stretching the rest of the cocaine when the police arrived.

Brown did not testify at the sentencing hearing. The Presentence Investigation Report recommended finding that he was responsible for all cocaine seized in Rime's kitchen, as well as the 19 grams of cocaine found on his person. In opposing this finding, Brown admitted going to Rime's town home on May 13 to buy the 19 grams, but not to stretch Rime's cocaine supply. The district court found that Brown was at Rime's residence to help stretch his cocaine and was therefore responsible for more than 1,000 grams found in the kitchen area and the 19 grams found on his person.

On appeal, Brown argues the government failed to prove by a preponderance of the evidence that he was responsible for more than 500 grams of cocaine. He notes that 500 grams found in Rime's toolbag were not cut or stretched, and that the government failed to present evidence of the purity of the cocaine found in the kitchen to support Rime's testimony they were stretching his supply. He argues the testimony of drug addict Rime, who cooperated in hopes of a more favorable sentence, "was incredible on its face," as the police did not find inositol during the warrant search and the government presented no evidence that Brown ever touched the can of acetone.

-3-

We conclude the district court did not clearly err. Brown's text message to Rime the day before the warrant search created an inference he was in Rime's town home for secret activity, such as stretching Rime's new supply of cocaine. When the police arrived on May 13, Brown was closer to the kitchen, where over 500 grams of cocaine were being stretched, and he was near the bathroom, where a bag containing a white substance had been flushed in the toilet. It is unlikely that drug dealer Rime would invite a small purchaser to his home while he was diluting the purity of $37,000 worth of cocaine. The government's failure to seize inositol during the search is not particularly probative; case agent Layton testified he did not know what inositol was and did not look for it. Rime testified that Brown was there to help stretch the cocaine found in his kitchen. "A district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility." United States v. Plancarte-Vazquez, 450 F.3d 848, 852-53 (8th Cir. 2006). There was no sentencing error.

The judgment of the district court is affirmed.

_____