# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2309

_____

United States of America,        *
        *
       Appellee,       *
        *  Appeal from the United States
    v.           *  District Court for the
        *  Southern District of Iowa.
Uriel Mora Gonzales,       *
        *      [UNPUBLISHED]
       Appellant.     *

_____

Submitted: February 18, 2011
Filed: July 26, 2011

_____

Before SMITH, GRUENDER, and BENTON, Circuit Judges.

_____

PER CURIAM.

A jury convicted Uriel Mora Gonzales of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and the district court[1] sentenced him to 188 months' imprisonment. Gonzales appeals, arguing that (1) insufficient evidence exists to sustain the conviction and (2) his prison sentence is substantively unreasonable. For the following reasons, we affirm.

---

[1]The Honorable Ronald E. Longstaff, United States District Court for the Southern District of Iowa.

## I. *Background*

On October 6, 2009, federal Drug Enforcement Agency (DEA) agents in Des Moines, Iowa, received a tip that they would find a car with California license plates at a certain Super 8 Motel and that this car contained methamphetamine intended for delivery in Des Moines. The agents located the motel and a silver Ford Focus bearing California license plates. According to the motel's office personnel, the car belonged to Joe Cruz, who had a California driver's license.

Agents began watching the hotel and the vehicle. The following afternoon, they observed a green Ford Mustang arrive at the hotel and park next to the silver Focus. Joseph Conwel, drove the Mustang, and Gonzales occupied the front passenger seat. Cruz exited the motel and met both men outside. Soon thereafter, Gonzales joined Cruz in Cruz's silver Ford Focus, Conwell returned to the Mustang, and both vehicles exited the motel parking lot.

Police stopped the silver Ford Focus and obtained consent to search the vehicle. The officers discovered two packages of methamphetamine concealed in the passenger-side seatbelt housing. The packages were wrapped in layers of plastic wrap and coated in red axle grease between each layer. Additionally, a search of Gonzales yielded, among other items, $647.00 in cash, a cellular phone showing a recent call to Conwell in its call history, and a Ford automobile key. Gonzales told the officers that this key was for his car located in California.

Meanwhile, a different set of police officers had followed Conwell's green Mustang to his house. Upon questioning, Conwell soon admitted that he was involved in a delivery of narcotics. Conwell led the officers to a blue Ford Focus and told them that Gonzales had concealed money in it. The key recovered from Gonzales's pocket at his traffic stop opened this blue Ford Focus, and police discovered $35,000 in cash hidden in a space between the car's frame and front bumper. Conwell told authorities that his uncle, "Fernando," distributed methamphetamine in Des Moines, Iowa, and

that Conwell occasionally assisted him by retrieving methamphetamine from cars or concealing cash in cars. Conwell also told officers that, on that very day, his uncle called him with instructions to pick up a driver from a McDonald's fast-food restaurant in West Des Moines, bring the driver back to Conwell's home, and load the driver's car with drug proceeds. According to Conwell, he proceeded to the McDonald's where he found Gonzales. Conwell claimed that he approached Gonzales because his uncle "only had Mexican drivers," and Gonzales was the only individual present who appeared to be of Hispanic descent. Although Conwell's lack of proficiency in Spanish prevented substantial communication between the two, he called his uncle to interpret.

According to Conwell, he drove his green Mustang back to his house from McDonald's, and Gonzales followed in his blue Ford Focus bearing California plates, the same blue Ford Focus that authorities ultimately searched. In contrast, Gonzales claimed at trial that Conwell picked him up in the green Mustang and drove him back to his house where the blue Ford Focus was already parked.[2] Conwell also told officers that, upon returning to his house with Gonzales following him, the two divided the money into stacks, wrapped it in saran wrap, tied the stacks together with a rope to facilitate later extraction, and concealed them in the space between the car's frame and bumper. Gonzales counters that he never participated in any of this and that he possessed the keys to the Ford Focus at the time of the traffic stop only because Conwell had asked him to reposition it in Conwell's driveway so that it no longer blocked Conwell's green Mustang.[3] Government testimony flatly contradicts Gonzales's claim that he only occupied the blue Ford Focus for a matter of seconds to reposition it in Conwell's driveway. Upon searching the blue Ford Focus, officers

---

[2]In fact, Gonzales claims that he did not drive to Des Moines at all, but "caught a ride" from an undisclosed friend from California to Iowa to look for work there.

[3]The record does not reveal how the green Mustang, which Gonzales claimed they had just arrived in, suddenly became blocked in by the Ford Focus.

discovered Gonzales's belongings and documents strewn throughout the car, which were indicative of a more extended stay in the vehicle. According to one officer who testified, it appeared as though Gonzales had been "living out of the vehicle."

Following trial, the jury convicted Gonzales of conspiracy to distribute 500 grams or more of methamphetamine but acquitted him of possession of methamphetamine with intent to distribute. At sentencing, Gonzales requested a downward variance to account for time that he would "be detained by the immigration service after he completes his term of service," but the district court declined to vary, citing Gonzales's perjury at trial and his perceived lack of remorse. The district court sentenced Gonzales within the applicable advisory-Guidelines range to 188 months' imprisonment, and Gonzales appealed.

## II. *Discussion*

On appeal, Gonzales argues that insufficient evidence supports his conviction for conspiracy to distribute methamphetamine. But, as the basis for this claim, Gonzales relies on his own contrary account of facts and does not explain how the government's evidence at trial, when properly viewed in the light most favorable to the jury's guilty verdict, is insufficient. Rather, Gonzales maintains in his brief that, "[t]hroughout these proceeding[,] [sic] the Defendant has rightfully asserted that he had no knowledge of Mr. Cruz's activities or the drugs that were contained in Mr. Cruz's vehicle."

### A. *Sufficiency of the Evidence*

To accept Gonzales's account of the facts would require this court to make a credibility determination as to Conwell's inculpatory testimony and to weigh the evidence, neither of which is permitted under the applicable standard of review.

> Although we review the district court's denial of a motion for judgment of acquittal de novo, the underlying standard of review is highly

deferential to the jury's verdict. We reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt. We view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence. The standard for reviewing a claim of insufficient evidence is strict, and a jury's guilty verdict should not be overturned lightly.

*United States v. Van Nguyen*, 602 F.3d 886, 897 (8th Cir. 2010) (internal quotations and citations omitted). "This very strict standard allows us to reverse a jury conviction only if we conclude that no reasonable jury could have found the accused guilty beyond a reasonable doubt. Moreover, in making this determination, we may not weigh the evidence or assess the credibility of witnesses." *United States v. Malloy*, 614 F.3d 852, 861 (8th Cir. 2010) (quotations and citation omitted).

To obtain a valid conviction, the government had to prove beyond a reasonable doubt that Gonzales: (1) agreed to distribute methamphetamine, (2) knew about the conspiracy, and (3) knowingly became a part of the conspiracy. *United States v. Vinton*, 429 F.3d 811, 815 (8th Cir. 2005). Conwell's testimony provides ample evidence of each of these elements. Conwell testified that he and Gonzales collaborated to conceal the drug proceeds in Gonzales's car. He also testified that Conwell's uncle regularly employed drivers like Gonzales to deliver drugs and drug proceeds. Moreover, Conwell's testimony directly contradicted Gonzales's assertion that he had merely moved the car to prevent its obstruction of the Conwells' driveway. Gonzales also possessed the key to the blue Ford Focus and had some of his belongings in the car's passenger compartment. And, although Gonzales alleges that Conwell fabricated his testimony, this court, reviewing for sufficiency of the evidence, may not make a credibility determination and discount Conwell's testimony. *See Malloy*, 614 F.3d at 861 ("[I]n making this determination" as to whether no reasonable jury could have found the accused guilty beyond a reasonable doubt, "we may not weigh the evidence or assess the credibility of witnesses.") Accordingly, we conclude

-5-

that sufficient evidence existed such that it cannot be said that no reasonable juror could have found Gonzales guilty of conspiring to distribute methamphetamine.

### B. *Substantive Reasonableness of Gonzales's Sentence*

Finally, Gonzales argues on appeal that his sentence of 188 months' imprisonment was substantively unreasonable because it failed to take into account the likely and indeterminate detention that he will endure while awaiting his removal from this country. Gonzales claims that, in light of these unique circumstances, the district court should have varied downward from the Guidelines range. This contention is without merit.

In reviewing Gonzales's challenge to the substantive reasonableness of his sentence, the court may review the district court's sentencing decision only for abuse of discretion. *United States v. Shuler*, 598 F.3d 444, 447 (8th Cir. 2010). Moreover, we have stressed that "'[s]ubstantive appellate review in sentencing cases is narrow and deferential[,]'" and that "'[i]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" *Id.* (quoting *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc)). A court abuses its sentencing discretion when it "fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Mousseau*, 517 F.3d 1044, 1048 (8th Cir. 2008) (quotation and citations omitted). "Although the court is required to consider the relevant factors, it is not required to make specific findings with respect to each factor considered." *United States v. Miller*, 557 F.3d 910, 917 (8th Cir. 2009). "All that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors." *Id.* (quotation, alteration, and citation omitted).

This circuit has never directly addressed whether a sentencing court must consider the length and indeterminate nature of an illegal alien's inevitable *pre-removal detention* when fashioning a sentence which adequately considers the § 3553(a) factors. However, we have held that a district court does not abuse its discretion in declining to vary downward based on, among other things, the fact that a defendant faces removal. *See, e.g.*, *United States v. Sigala*, 521 F.3d 849, 851–52 (8th Cir. 2008). We have declined to incorporate the prospect of an alien's removal into the necessary § 3553(a) factors. In *United States v. Molina*, we stated that "Molina's argument that the district court should have considered the fact that he will be deported after serving his sentence is also without merit" because, like the cost of Molina's imprisonment—a fact which he also urged should have been considered—"the likelihood of deportation is not among the sentencing factors set out in § 3553(a)." 563 F.3d 676, 678 (8th Cir. 2009). We also noted in *Molina* that "[t]his is not to say that the district court was precluded from considering the effects of Molina's eventual deportation in connection with the statutory sentencing factors, only that the court was not *required* to do so after Molina failed to raise the issue at sentencing." *Id.* at 679 n.3.

In contrast to *Molina*, Gonzales actually objected *at sentencing* that the district court ought to consider the impact of his ensuing removal proceedings. Nonetheless, we conclude that the district court did not err by failing to explicitly incorporate Gonzales's deportation detention uncertainty into its sentencing rationale. The record is clear in this case that the district court did *consider* Gonzales's inevitable detention attending his removal proceedings but merely refused to accord it countervailing weight vis-à-vis his perjury at trial and overall lack of contrition. Simply put, "even though [an alien-defendant's] post-incarceration deportation *could* be a factor considered by the district court when contemplating a variance, just as any factor could, it did not influence the court in this case," *United States v. Mireles-Martinez*, 399 F. App'x 132, 134 (8th Cir. 2010) (unpublished per curiam), nor must it.

Similarly, any indeterminate detention that may result from Gonzales's potential removal proceedings need not be considered. Gonzales alleges no other error in his sentence. Therefore we conclude the district court did not abuse its discretion in sentencing him to a within-Guidelines sentence of 188 months' imprisonment.

### III. *Conclusion*

Based on the foregoing, we affirm.

_____