# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2967

_____

United States of America,            *
                                    *

        Appellee,          *

                                 *   Appeal from the United States

      v.                   *   District Court for the

                                 *   Northern District of Iowa.

Thomas Wohlman,            *

                                    *

        Appellant.       *

_____

Submitted: March 17, 2011
Filed: August 23, 2011

_____

Before SMITH, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Thomas Wohlman pleaded guilty to one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). The district court[1] sentenced Wohlman to 121 months' imprisonment, the top of the Guidelines range. On appeal, Wohlman argues that the district court committed several procedural errors and imposed an unreasonable sentence. He also argues that his sentencing counsel was ineffective for failing to object to an upward departure under U.S.S.G. § 2G1.3(b)(2)(A). We affirm

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Wohlman's sentence and decline to reach the merits of Wohlman's ineffective-assistance-of-counsel claim.

## I. *Background*

Between October 21, 2005, and July 11, 2006, Wohlman communicated via the Internet on 11 occasions with Special Agent Robert Larsen of the Iowa Division of Criminal Investigation in Council Bluffs, Iowa. These communications included six online chats and five exchanges of "off-line" messages. During these communications, Agent Larsen assumed the online identity of "Abby," a 15-year-old girl.

On October 21, 2005, during Wohlman's first chat session with Abby, Wohlman, using "tom68iowa" as his screen name, identified himself as a 26-year-old male from Des Moines, Iowa. He was actually 37 years old at the time and lived in Garwin, Iowa. During the chat session, Wohlman posted a picture of himself for Abby to see. And, Abby informed Wohlman that she was 15 years old. Wohlman began asking Abby sexually oriented questions. For example, he asked Abby if he could take her virginity. He then began making plans to meet Abby.

During a December 2, 2005 chat session, Wohlman posted a pornographic picture for Abby to view. During chat sessions, he told Abby that he wanted to have vaginal intercourse with her, asked Abby for directions to her home (which Agent Larsen provided), talked about getting a motel room, asked for Abby's address so that he could send her money, and told Abby that he had purchased some clothes for her to wear when they met. During these online communications, Wohlman had explicit sexual discussions with Abby. Wohlman made several appointments to meet with Abby in Council Bluffs, Iowa; however, no meeting ever took place.

Wohlman's conversations with Abby were not his only attempts to sexually interact with a minor. Less than a year after Wohlman's communications with Abby ended on July 11, 2006, he began communicating with Investigator Robert Kramer of

the Cedar Falls Police Department, who posed as "Monica," a 15-year-old girl . On the morning of March 16, 2007, Wohlman communicated twice via the Internet with Investigator Kramer, using "tom68iowa" as his screen name. Investigator Kramer informed Wohlman that Monica was 15 years old. During the first chat session, Wohlman had explicit sexual discussions with Monica, including his statement that he wanted her to perform oral sex on him. Wohlman agreed to meet Monica at Wal-Mart in Cedar Falls, Iowa.

Wohlman did not show up at Wal-Mart at the arranged time. During a second chat on the morning of March 16, 2007, Wohlman expressed his concern that Monica was a police officer. Wohlman and Monica again made plans to meet at Wal-Mart in Cedar Falls, Iowa. Later that morning, Wohlman drove to Wal-Mart in Cedar Falls, Iowa, to meet Monica. After Wohlman left Wal-Mart, officers stopped his vehicle and took him into custody. Later that day, Investigator Kramer interviewed Wohlman at the Cedar Falls Police Department. During the interview, Investigator Kramer asked Wohlman what he and Monica were going to do if they had met, and Wohlman replied, "Maybe oral sex."

On March 16, 2007, officers executed a search warrant at Wohlman's residence located in Garwin, Iowa, and seized Wohlman's computer. Subsequently, Lieutenant Kent Smock of the Black Hawk County Sheriff's Office conducted forensic examinations of Wohlman's computer hard drive. He located 176 images of suspected child pornography or child erotica. Most of the images were thumbnails of images received using Yahoo! Messenger software. Lieutenant Smock found no evidence that the user saved the images and determined that the images of child pornography were accessed before October 2006. Some of the images depicted prepubescent minors engaged in oral sex and vaginal intercourse with adult males. The user accessed most of the images logged in under the user profile "Josh" but accessed some of the images under the user profile "Tom." Wohlman's son, Josh, died in October 2006, but someone accessed Josh's profile *after* this date. Additionally, most of the images of

child pornography were located in a subfolder of a folder named "tom68iowa." This was the screen name that Wohlman used when communicating with Abby and Monica. The computer also contained sexually explicit chats occurring after October 2006, including a portion of the chat with Investigator Kramer.

A grand jury indicted Wohlman on two counts of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). Count 1 concerned Wohlman's alleged attempted enticement of Abby between October 2005 and July 2006. Count 2 concerned Wohlman's alleged attempted enticement of Monica in March 2007. Wohlman pleaded guilty to Count 1 pursuant to a plea agreement. In the plea agreement, the parties agreed that Wohlman would plead to Count 1 and that the government would move to dismiss Count 2.

The presentence investigation report (PSR) set Wohlman's base offense level at 24 applying the 2005 version[2] of U.S.S.G. § 2G1.3(a). The PSR then added the following enhancements to the offense level: (1) a two-level enhancement for misrepresentation of age under § 2G1.3(b)(2)(A); (2) a two-level enhancement for use of a computer under § 2G1.3(b)(3)(A); (3) a five-level enhancement under U.S.S.G. § 4B1.5(b)(1) for engaging in a pattern of activity by attempting to persuade Abby on two or more occasions to engage in sexual conduct. Following a three-level reduction for acceptance of responsibility, the PSR calculated Wohlman's final offense level as 30. With a criminal history category of I, his advisory Guidelines range was 97 to 121 months' imprisonment, and his fine range was $15,000 to $150,000.

At sentencing, Wohlman did not object to the PSR's calculation of his Guidelines range. After calculating the Guidelines range in accordance with the PSR and reporting a Guidelines range of 97 to 121 months' imprisonment, the district court

---

[2]Because of the date of the offense conduct in Count 1, the 2005 version of the Guidelines was used to avoid ex post facto problems.

heard argument on the government's motion for an upward departure. The government first announced the parties' stipulation that the images "found on defendant's computer contained a mixture of child pornography and child erotica." The government requested an upward departure under U.S.S.G. §§ 5K2.0 and 5K2.21 on two grounds: (1) Wohlman's attempted enticement of an undercover investigator on March 16, 2007 (which formed the basis for Count 2) and (2) the presence of 176 images of child pornography and child erotica on Wohlman's computer. Wohlman moved for a downward variance and called two witnesses in support: Elizabeth Wagner, a licensed clinical social worker who had seen Wohlman in approximately 50 sessions, and Dr. Craig Rypma, a clinical and forensic psychologist who had examined Wohlman in June 2008 and October 2009. Dr. Rypma had prepared a two-page report containing conclusions from his examinations. This report was attached to Wohlman's sentencing memorandum. Dr. Rypma also prepared an eight-page report justifying his conclusions, which was admitted into evidence at sentencing as an exhibit.

With regard to Wagner and Dr. Rypma, the district court commented that

Elizabeth Wagner is hardly qualified to offer the opinion as to whether this individual is a sexual predator or likely to reoffend. She simply does not have the professional credentials to get out on that limb. I would call her's crystal ball psychology. And I think Dr. Rypma, for the reasons that I'll state, is much in the same boat. *I just found him impeached soundly because of some of the statements that he made in his testimony* and the—and the basis asserted. I just—I didn't think either of them were helpful, and neither of them were credible.

(Emphasis added.)

After the conclusion of all arguments and allocution, the district court imposed Wohlman's sentence. The court affirmed the PSR's Guidelines range computation and granted Wohlman a three-level reduction for acceptance of responsibility. The court

acknowledged that it had "to carefully consider each and every statutory factor that applies under 18 U[.]S[.]C[.] [§] 3553(a)" in fashioning Wohlman's sentence. After computing a Guidelines range of 97 to 121 months' imprisonment, it denied the government's motion for an upward departure but indicated that it would "take into consideration in arriving at the appropriate disposition all the arguments made by [the government]." In considering the potential penalty to impose, the court expressed its assessment of Wohlman's individual characteristics, stating:

> The Court then, of course, considers the statutory penalties. We know that we have a mandatory minimum here and a cap of 30 years, that probation is not a possibility under the statute.
>
> The Court has considered the nature and circumstances of the offense and the history and characteristics of the defendant. And this overlaps a little bit on what my findings will be on the motion to vary filed by the defense as Document 75 in the records of the court. *The plain fact of the matter here is that defendant is a repeat sex offender, who has an ongoing interest in children as sexual objects*. This interest preceded or was—existed before the death of his son, which was tragic. And there is no clear or convincing testimony that suggests to me any connection between the death of his son and his criminal behavior. That may be, but I am not convinced of that.
>
> It appears to this Court that Mr. Wohlman is getting bolder. This time, instead of merely chatting with someone he believed to be a child, he actually went to meet a child to engage in sexual conduct.
>
> *In addition to that, he has an interest in child pornography as shown—or child—children as sex objects by virtue of what was found on his computer*. And I would note that it has been stipulated that both erotica and pornography were found on his computer and he does not dispute that. There is no basis for the Court to assume that that pornography and erotica got on his computer by mistake. He was using his sign-in, as well as his deceased son's at some point.

(Emphasis added.)

After considering the testimony of Dr. Rypma and Wagner, "the uncharged criminal conduct with the other contact with females," "all of the information . . . contained in the uncontested portions of the [PSR]," "everything . . . learned in court," and the "statutory factors," the court then declined to "vary downward."

Thereafter, the court asked whether the parties had any questions regarding its statements thus far, and Wohlman's counsel replied that he had no questions. "[A]fter considering all the statutory factors that apply," the court then imposed a sentence of 121 months' imprisonment—the "top of the advisory [G]uideline[s] range"—"[f]or the reasons argued by the government in its motion for an upward departure." The court also ordered Wohlman to pay "a fine in the amount of $15,000."

After imposition of sentence, the district court asked counsel if there was "anything else that we need to tend to on this case today?" Wohlman's counsel replied no, lodging no procedural objections to the district court's sentence.

## II. *Discussion*

On appeal, Wohlman asserts that the district court committed six procedural errors and imposed a substantively unreasonable sentence. He also argues that his sentencing counsel was ineffective for failing to object to the enhancement under U.S.S.G. § 2G1.3(b)(2)(1) for misrepresentation of identity.

### A. *Procedural Errors*

Wohlman alleges that the district court procedurally erred (1) in finding that the "plain fact of the matter here is that defendant is a repeat sex offender"; (2) by requiring Wohlman to establish by "clear and convincing" evidence—as opposed to a preponderance of the evidence—that his son's death was a mitigating factor; (3) in finding that Wohlman was "getting bolder" when he traveled to engage in sexual conduct with a child because the evidence reflects that, from the time of this conduct

-7-

in 2007 to the time of sentencing, Wohlman was "rehabilitating"; (4) in finding that Wohlman had "an interest in child pornography" and viewed "children as sex objects by virtue of what was found on his computer" because the government presented no evidence to support such findings; (5) by rejecting Dr. Rypma's testimony regarding Wohlman's risk of reoffending; and (6) in imposing a $15,000 fine without supporting reasons.

> The first step in reviewing a sentence is to ensure that the district court committed no significant procedural error. Examples of procedural error include: failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*United States v. Townsend*, 618 F.3d 915, 918 (8th Cir. 2010) (quotation and citation omitted).

Wohlman lodged no procedural objections to the district court's sentence. Wohlman even declined to do so when the district court inquired as to whether there was "anything else that we need to tend to on this case today." Because he "failed to object at sentencing to any alleged procedural sentencing error," "the error is forfeited and may only be reviewed for plain error." *Id.* (quotation and citation omitted). As a result, Wohlman "must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *Id.* (quotation and citation omitted). But "[e]ven if [Wohlman] shows these three conditions are met, we may exercise our discretion to correct a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation and citation omitted).

As an initial matter, Wohlman argues that the district court "improperly treated the Guidelines, the PSR requests, and the government's requested departures as

binding, mandatory, or reasonable unless Wohlman rebutted them." On the contrary, however, the record reveals that the district court recognized the discretionary nature of the Guidelines, stating,

> I am aware that I have significant discretion to vary, and I have carefully considered all of the arguments made by the parties orally and in writing. I have certainly considered the statement made by Mr. Wohlman today and everything I know about the case, and I simply find no basis to vary downward, and I decline the invitation to do so.

The district court also noted its examination of the § 3553(a) factors, stating that it had "consider[ed] all the statutory factors."

As to Wohlman's six delineated allegations of procedural error, we hold that "the district court did not commit significant procedural error, much less plain error," in selecting Wohlman's sentence. *Id.* at 919 (quotation and citation omitted). First, Wohlman asserts that the court erred in stating that "[t]he plain fact of the matter here is that defendant is a repeat sex offender." Although Wohlman has no prior sex offense convictions, "[t]he sentencing court is not prohibited from considering uncharged or acquitted conduct." *United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008). Paragraphs 38 and 39 of the PSR—which Wohlman did not object to—detail the factual details of dismissed Count 2. *See United States v. Davis*, 583 F.3d 1081, 1095 (8th Cir. 2009) ("Unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes.") (quotation, alteration, and citations omitted). Count 2 concerned Wohlman's attempt in 2007 to entice Monica to engage in sexual activity and his act of driving to Wal-Mart to meet her. This conduct occurred *after* the conduct charged in Count 1. Therefore, the district court did not err by describing Wohlman as a "repeat sex offender" based on his 2007 conduct.

Second, Wohlman contends that the district court erroneously held him to a higher standard of proof in establishing his son's death as a mitigating factor when it stated that "there is no clear or convincing testimony that suggest to me any connection between the death of his son and his criminal behavior." Even assuming that the district court erred in stating that " no clear or convincing testimony" existed, such error did not affect Wohlman's substantial rights. *See Townsend*, 618 F.3d at 918. Immediately after the statement at issue, the district court commented that it was "not convinced" that the death of Wohlman's son should be considered a mitigating factor. The record supports a finding of an absence of evidence establishing a link between Wohlman's conduct and his son's death. Wohlman's offense of conviction—Count 1—occurred *before* his son died—only the 2007 conduct, forming the basis of Count 2, occurred after his son's death. And, as the government notes, the district court *never* said that it *could not* consider this mitigating factor under § 3553(a); instead, it chose not to believe that there was evidence to support such a connection. Furthermore, the district court dismissed the defense experts that testified for this mitigating factor as "totally unconvincing" and neither "helpful" nor "credible." Reviewing the district court's comments in their totality, we conclude that there is no reasonable probability that the alleged error regarding the standard of proof affected Wohlman's sentence. *See United States v. Ault*, 598 F.3d 1039, 1042 (8th Cir. 2010) (explaining that an error affects a defendant's substantial rights if there is "a reasonable probability that, but for the error, the outcome would have been different"). Wohlman's substantial rights were not affected, and plain-error relief is unwarranted.

Third, Wohlman argues that the district court clearly erred in stating, "It appears to this Court that Mr. Wohlman is getting bolder. This time, instead of merely chatting with someone he believed to be a child, he actually went to meet a child to engage in sexual conduct." Although Wohlman admits that "when comparing the conduct in 2005 with the conduct in 2007, [he] took the extra step of actually going to meet a minor," he asserts that this "extra step" occurred "after his son's death and three years prior to the sentencing hearing." Wohlman maintains that from the 2007 conduct to

the time of sentencing, he was rehabilitating by receiving counseling, committing no additional crimes, and complying with pretrial supervision. We reject Wohlman's argument, because—by Wohlman's own admission—he did take an "extra step" in 2007 by traveling to meet Monica. The district court's finding that Wohlman was "getting bolder" is also supported by unobjected-to ¶¶ 38 and 39 of the PSR, which detail Wohlman's efforts to meet Monica. This conduct occurred after he merely chatted with Abby—the conduct forming the basis for the offense of conviction.

Fourth, Wohlman asserts that the district court erred in finding that "he has an interest in child pornography—or child—children as sex objects by virtue of what was found on his computer." He argues that the government presented no witness or evidence on this issue. But Wohlman failed to object to ¶ 41 of the PSR, which outlines the forensic examination of his computer. That paragraph specifically states that Lieutenant Smock "located 176 images of suspected child pornography and/or child erotica" from Wohlman's computer. "[M]ost of these images of child pornography were located in a subfolder named 'tom68iowa.'" Paragraph 41 of the PSR supports the district court's finding.

Fifth, Wohlman contends that the district court erroneously found that "there's very little basis for [Dr. Rypma's] conclusions" that Wohlman would not reoffend by committing similar crimes in the future. But the district court identified several problems with Dr. Rypma's testimony, including (1) Dr. Rypma's failure to disclose to the court "the research that he relies on for his conclusions and opinions"; (2) the government "soundly" impeaching Dr. Rypma's testimony; and (3) the fact that "most [of the testimony was] based on Mr. Wohlman's statements, which are sometimes contradictory, and then, of course, limited contact and discussion of his sexual background, with Dr. Rypma admitting that he is not forthcoming always in his disclosures of personal matters." We find no error in the district court giving Dr. Rypma's testimony little weight, as "[t]he weight to be accorded expert opinion evidence is solely within the discretion of the judge sitting without a jury, and while

-11-

the judge may not arbitrarily fail to consider such testimony, he is not bound to accept it." *Am. Milling Co. v. Tr. of Distribution Trust*, 623 F.3d 570, 573–74 (8th Cir. 2010) (quotations and citation omitted). The district court "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Anderson*, 618 F.3d 873, 883 (8th Cir. 2010) (quotation and citation omitted). Wohlman has supplied no sound basis for reversing the district court's conclusion to discount Dr. Rypma's opinion.

Finally, Wohlman argues that the district court procedurally erred in imposing a $15,000 fine without providing supporting reasons. "A district court's imposition of a fine and the determination of the amount of the fine will not be reversed unless clearly erroneous. *United States v. Allmon*, 500 F.3d 800, 807 (8th Cir. 2007) (quotation and citation omitted). "Because [Wohlman] did not object at the hearing, this court cannot reverse the district court unless its actions are plain error." *Id.* (quotations and citations omitted).

> Under USSG § 5E1.2(a), the district court shall impose a fine "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." In determining the amount of the fine, the court must consider eight factors. "The district court need not provide detailed findings under each of the factors listed above, but must provide enough information on the record to show that it considered the factors above so that the appellate court can engage in meaningful review." *See* [*United States v.*] *Berndt*, 86 F.3d [803,] 808 [(8th Cir. 1996)].

*Id.* (footnote omitted).

"It is . . . true that this court vacates fines when the district court does not make findings regarding the defendant's ability to pay." *Id.* But we will find no plain error in a district court's imposition of a fine where the defendant fails to "show [that] he could not pay the fine" and "[t]he record indicates [the defendant's] ability to pay [the

adjudged] fine." *Id*. at 808. Here, both parties agreed that, under the Guidelines, the range of the fine was $15,000 to $150,000. Wohlman did not argue at sentencing that he *could not* pay the fine, and the district court imposed the lowest fine under the Guidelines—$15,000. The record supports the district court's imposition of the fine. Paragraph 69 of the PSR stated that Wohlman's net worth was $440,977. Although Wohlman's objection to ¶ 69 stated that $183,000 of his assets were sold to pay debts and expenses, he never contended that he lacked the ability to pay a fine. And, at sentencing, his counsel admitted that Wohlman *did* have the ability to pay a fine, stating:

> As to the fine, Your Honor, I guess I upset the US probation officer. I was just trying to correct some information in the first draft of the presentence report, *but the fine range indeed is 15,000 to 150,000*. I tried to make some corrections. Right now the presentence report shows a $441,000 net worth. Of course, half of that is Mrs. Wohlman's. *The adjusted net worth, as pointed out, is 258,000. I wasn't trying to suggest that he didn't have an ability to pay a fine*. I was merely trying to get the information correct . . . .

(Emphasis added.)

Thus, counsel's representations to the district court at sentencing confirm that Wohlman was not challenging his ability to pay a fine and that, in fact, he did have the ability to pay a $15,000 fine, as his net worth, by his calculation, was $258,000. We therefore hold that no plain error occurred.

### B. *Substantive Reasonableness*

Wohlman argues that the district court imposed a substantively unreasonable sentence because it focused on the offense and the unsupported belief that Wohlman would commit future crimes against the public, while ignoring his history and characteristics of rehabilitation.

"We do have authority to review the court's refusal to grant a downward variance for abuse of discretion." *United States v. Brown*, 627 F.3d 1068, 1074 (8th Cir. 2010). Wohlman received a within-Guidelines sentence of 121 months. Because this sentence "is within the advisory [G]uideline[s] range, we accord it a presumption of reasonableness." *United States v. Bauer*, 626 F.3d 1004, 1010 (8th Cir. 2010).

A review of the record reveals that "the district court thoroughly considered the relevant factors set forth in § 3553(a) and reached a substantively reasonable conclusion." *Id*. First, the court acknowledged that it had to "carefully consider each and every statutory factor that applies under 18 U[.]S[.]C[.] [§] 3553(a)." Second, the court stated that it had "considered the nature and circumstances of the offense and the history and characteristics of the defendant." Third, the district court stated that it had "carefully considered" the "other statutory factors" even though it was not going to "dictate each and every one of them into the record." The court's decision not to recite all of the § 3553(a) factors is not erroneous, as "[w]e do not require the district court to mechanically recite the § 3553(a) factors when, as here, it is clear from the record that the court properly considered those factors." *United States v. McKanry*, 628 F.3d 1010, 1021 (8th Cir. 2011) (quotation and citation omitted). Furthermore,

> [t]he district court's decision to place greater emphasis in this case on factors that favored a sentence within the advisory range, such as the need to deter criminal conduct, to protect the public, and to avoid unwarranted sentence disparities, than on other § 3553(a) factors that might favor a more lenient sentence is a permissible exercise of the considerable discretion available to a sentencing court under the post-*Booker* regime.

*United States v. Ruelas-Mendez*, 556 F.3d 655, 658 (8th Cir. 2009).

Accordingly, we find that Wohlman's 121-month sentence is substantively reasonable.

-14-

C. *Ineffective Assistance of Counsel*

Wohlman also maintains that his sentencing counsel was ineffective for failing to object and argue against the two-level enhancement for misrepresentation of age under U.S.S.G. § 2G1.3(b)(2)(A). We decline to address the argument.

"We generally do not address claims of ineffective assistance of counsel on direct appeal because such claims are better addressed through collateral proceedings." *United States v. Williams*, 397 F. App'x 256, 257 n.2 (8th Cir. 2010 (unpublished per curiam) (citing *United States v. Lee*, 374 F.3d 637, 654 (8th Cir. 2004) ("A defendant's claims of ineffective assistance of counsel . . . may be heard [on direct appeal] only if a miscarriage of justice would otherwise result or if the district court has developed a record on the issues.") (internal citations omitted)). Wohlman has not shown that the record is sufficiently developed to address his ineffective assistance arguments or that a miscarriage of justice will result if we decline to do so at this juncture.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, concurring.

I can find no error in the sentencing process or the actual sentence of ten years and one month, the top of the guidelines. Accordingly, I concur.

Yet, I write to note that no molestation of any young person actually occurred. The conversations Wohlman had about sex with minor females took place with government agents who posed as minor females.

Wohlman has no felony convictions and operates an apparently successful business. A qualified expert witness testified that Wohlman was unlikely to reoffend and that he was not a predator. The district judge, however, gave little weight to this

testimony.  Although the sentence at the top of the guidelines stands approved, this judge suggests that this sentence is harsh considering the entire record and defendant's background.

_____